UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Dawnomah Dubois</u>

    v.                                    Civil No. 14-cv-451-LM

<u>Carolyn W. Colvin, Acting</u>
<u>Commissioner, Social</u>
<u>Security Administration</u>


**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Dawnomah Dubois moves to reverse the Acting Commissioner's decision to deny his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, I recommend that this matter be remanded to the Acting Commissioner for further proceedings consistent with this report and recommendation.

**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of

> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Acting] Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Acting

Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts, document no. 12. That statement is part of the court's record and will be summarized here, rather than repeated in full.

Dubois has been diagnosed with bipolar disorder, dysthymic disorder,[1] personality disorder, posttraumatic stress disorder,

---

[1] Dysthymia is "[a] chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness." Stedman's Medical Dictionary 602 (28th ed. 2006).

and depression.  His treatment for those impairments has included a combination of medication and counseling.

In the Adult Function Report he submitted as part of his application for benefits, Dubois stated that he was discharged from his last full-time job, in 2009, for missing too much work due to depression.  See Administrative Transcript (hereinafter "Tr.") 312.  He said the same thing at his hearing before the Administrative Law Judge ("ALJ").  See Tr. 91, 112-13.  In March of 2012, he reported to a health-care provider that he had been fired from a job as a certified massage therapist "due to being out of work during a depressive episode."  Tr. 455.

Dubois's medical records include a Psychiatric Medication Evaluation, authored in March of 2012 by Emily Weston, a registered nurse.  In that evaluation, Weston observed, in the context of her assessment, that Dubois was "able to . . . return to usual work."  Tr. 457.

In May of 2012, Dr. Michael Schneider, a state-agency psychologist, reported the results of a Psychiatric Review Technique evaluation, see 20 C.F.R. § 404.1527a, based upon his review of Dubois's medical records.  In response to a question about the so-called "paragraph B" criteria for the impairment of affective disorders, as listed in the Social Security regulations, Dr. Schneider opined that Dubois had experienced no

4

extended episodes of decompensation. He also stated that Dubois had only mild restrictions of his activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace.[2] See Tr. 133. While Dr. Schneider rendered an opinion on whether Dubois's mental impairments satisfied the "paragraph B" criteria, he does not appear to have given any opinion on DuBois's residual functional capacity ("RFC").[3]

In January of 2013, Dr. Sandra Rose, Dubois's treating psychologist, completed a Mental Impairment Questionnaire for Dubois. In it, she opined that Dubois had marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace. Beyond that, Dr. Rose opined that Dubois was unable to meet competitive standards in 10 of 16 mental abilities and aptitudes needed to do unskilled work, including these: (1) maintaining regular attendance and being punctual within customary tolerances; and (2) completing a normal workday and workweek without

---

[2] When rating the degree of limitation in these three functional areas, the Social Security Administration uses "the following five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1527a(c)(4).

[3] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

5

interruptions from psychologically based symptoms.  She also opined that Dubois's impairments and/or treatment would cause him to miss more than four days of work each month.

After conducting a hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3.  The claimant has the following severe impairments: bipolar disorder; anxiety; post traumatic stress disorder; and Lyme disease (20 CFR 404.1520(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> . . . .
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that: he has a moderate limitation in reaching and handling such that he is limited to occasional reaching overhead and out laterally with the bilateral upper extremities, and to frequent grasping with the right (dominant) hand.  The claimant should have only occasional contact with co-workers and the public and has a moderate limitation in maintaining pace and persistence, such that he would periodically need guidance or redirection but not to [the] level of unsatisfactory performance.
>
> . . . .
>
> 6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> . . . .

>    10.  Considering the claimant's age, education, work
>    experience, and residual functional capacity, there
>    are jobs that exist in significant numbers in the
>    national economy that the claimant can perform (20 CFR
>    404.1569 and 404.1569(a)).

Tr. 144, 145, 151.  Based upon his assessment of Dubois's residual functional capacity, and a response to a hypothetical question he posed to a vocational expert ("VE") that incorporated the RFC recited above, the ALJ determined that Dubois was able to perform the unskilled jobs of hand packer, bench worker, and inserter.

However, in response to a hypothetical question that changed the moderate limitation in maintaining pace and persistence to a moderately severe limitation,[4] and that added "a moderately severe limitation in adapting to workplace changes," Tr. 122, the VE testified that there were no jobs in the national economy that a person with such limitations could perform.  Similarly, when asked about a hypothetical employee who "would miss more than two days per month on a regularly ongoing basis," Tr. 123, the ALJ stated that there were no jobs in the national economy that such a person could perform.

---

[4] In his hypothetical question, the ALJ explained that a "moderately severe" limitation is one "that would substantially interfere with performance of job duties to the point of having the employee render performance that's unsatisfactory to an employer."  Tr. 122.

7

**III. Discussion**

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for DIB; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). The only question in this case is whether Dubois was under a disability from July 30, 2011, through March 14, 2013, which is the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for DIB, an ALJ is required to employ a five-step process. See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

When making a step-three determination in the case of an applicant who claims a mental impairment, the ALJ must consider whether the impairment results in:

> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

In the parlance of Social Security disability determination, the four considerations listed above are known as the "paragraph B" criteria.  While the paragraph B criteria are used to assess the severity of a mental impairment at step two, and to determine whether a mental impairment meets or equals the severity of a listed impairment at step three, "the paragraph B criteria . . . [do] not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment [at step four]."  Dias v. Colvin, 52 F. Supp. 3d 270, 285 (D. Mass. 2014) (quoting Beasley v. Colvin, 520 F. App'x 748, 754-55 (10th Cir. 2013)).

The claimant bears the burden of proving that he is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)). Finally,

> [i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the claimant or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

### B. Dubois's Claims

Dubois claims that the ALJ erred by: (1) basing his RFC assessment upon his own lay knowledge rather than a medical opinion; and (2) failing to give good reasons for giving little weight to the opinions of Dr. Rose, his treating psychologist. In the discussion that follows, the court presumes that the ALJ gave sufficient reasons for giving little weight to Dr. Rose's opinions. Even so, this case must be remanded because the ALJ's assessment of Dubois's RFC is not supported by substantial evidence.

In assessing Dubois's RFC, the ALJ gave "little weight to the opinion of Dr. Rose, that the claimant has marked limitations in social functioning and in maintaining concentration, persisten[ce], or pace, and is unable to meet

10

competitive standards in almost every area of mental ability required for unskilled work." Tr. 150. He did not, however, specifically address Dr. Rose's opinion that Dubois would miss more than four days of work per month due to his mental impairments and/or treatment for them. Beyond that, the ALJ gave "some weight to the statement of Nurse Weston, that the claimant is able to return to his usual work,"[5] id., and gave "little weight to the State agency psychological consultant's mental assessment . . . that the claimant's impairments result in only mild limitations," Tr. 151.

Dubois argues that the ALJ impermissibly interpreted raw medical evidence when formulating his mental RFC. Legally, he relies upon the rule that when presented with conflicting medical opinions concerning a claimant's RFC, the ALJ may not formulate an RFC by splitting the difference between the two. See Bubar v. Astrue, No. 11-cv-107-JL, 2011 WL 6937507, at *5-6 (D.N.H. Dec. 5, 2011), report & recommendation adopted by 2011 WL 6937476 (D.N.H. Dec. 30, 2011); Kaylor v. Astrue, No. 2:10-cv-33-GZS, 2010 WL 5776375, at *4-5 (D. Me. Dec. 30, 2010),

---

[5] In giving weight to Weston's statement, the ALJ acknowledged that, as a nurse, she was "not an acceptable medical source." Tr. 150. That means that her statement is not a medical opinion because, in the Social Security context, the term "medical opinion" is reserved for statements from acceptable medical sources. 20 C.F.R. § 404.1527(a)(2).

report & recommendation adopted by 2011 WL 487844 (D. Me. Feb. 7, 2011).  Dubois's reliance upon Bubar and Kaylor appears to be based upon the ALJ's determination that he had "a moderate limitation in maintaining pace and persistence," Tr. 145, in the face of Dr. Rose's opinion that he had marked difficulties in that realm, see Tr. 467, and Dr. Schneider's opinion that his difficulties in that realm were only mild, see Tr. 133.  While the ALJ does appear to have split the difference between two medical opinions, he does not appear to have run afoul of Kaylor by doing so.

In Kaylor, the court faulted the ALJ for "rejecting [a state-agency consultant's] RFC opinion as overestimating the plaintiff's functional capacities and [a treating physician's] RFC opinion as underestimating them [and] necessarily craft[ing] an RFC assessment in part from her own assessment of the raw medical evidence."  2010 WL 5776375, at *4.  In particular, the court focused upon the ALJ's rejection of conflicting medical opinions concerning "the plaintiff's capacity to lift and/or carry, sit, stand, and walk."  Id.  Here, the ALJ did something a bit different: he split the difference between two conflicting medical opinions on whether Dubois's mental impairments met one of the paragraph B criteria, but did not split the difference between two conflicting assessments of Dubois's RFC.  So, it

does not appear that the ALJ in this case did what the ALJ did in Kaylor.

Nevertheless, there is a problem with the ALJ's assessment of Dubois's mental RFC. As the applicable regulations provide, a claimant's mental RFC is an appraisal of his "capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(c). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). Thus, when he determined that Dubois was not disabled, due to his capacity to perform three different jobs, the ALJ necessarily found that Dubois had the capacity to work eight hours a day, five days a week.

The only medical opinion about Dubois's capacity to work on a regular and continuing basis is that of Dr. Rose, who stated that Dubois: (1) could not meet competitive standards in maintaining regular attendance and customary punctuality; (2) could not meet competitive standards in completing a normal workday and workweek without interruptions from psychologically based symptoms; and (3) would miss at least four days of work per month due to his mental impairments and/or treatment for them. The ALJ expressly gave little weight to Dr. Rose's first two opinions and implicitly discounted her third one. Rather

13

than pointing to other opinions that contradicted Dr. Rose's, and there is no such medical opinion in the record, the ALJ stated that Dubois's "treatment records reflect that the claimant has continuously had the ability to work."  Tr. 149. It is difficult to tell, even from context, whether the ALJ's reference to Dubois's "treatment records" is limited to the purely medical aspect of those records or also covers statements Dubois made to medical providers that ended up in their treatment records.  Either way, the ALJ erred in determining that Dubois had the capacity for work activity on a regular and continuing basis.

Turning first to the medical aspect of Dubois's treatment records, it is well established that "since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record." Gordils v. Sec'y of HHS, 921 F.2d 327, 329 (1st Cir. 1990) (per curiam) (citations omitted).  Consequently, "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person."  Santiago v. Sec'y of HHS, 944 F.2d 1, 7 (1st Cir. 1991) (per curiam); see also Manso-Pizarro, 76 F.3d at 17. Thus, it is generally a mistake for an ALJ to reject a medical

14

opinion that is uncontroverted by any other medical opinion and then formulate an RFC that runs counter to the medical opinion that he or she rejected. See, e.g., Martinez v. Colvin, No. 13-cv-144-LM, 2014 WL 910146, at *8-9 (D.N.H. Mar. 10, 2014) (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Jabre v. Astrue, No. 11-cv-332-JL, 2012 WL 1216260, at *8-9 (D.N.H. Apr. 5, 2012), report & recommendation adopted by 2012 WL 1205866 (D.N.H. Apr. 9, 2012)).[6] Here, the Acting Commissioner does not suggest that the rule from Santiago applies. Accordingly, if the ALJ based his RFC upon his appraisal of the medical aspect of Dubois's treatment records, he erred.

In her memorandum of law, the Acting Commissioner appears to characterize the ALJ's RFC as being based upon nonmedical rather than medical evidence. In so doing, she argues that the Social Security Administration's "official guidance . . .

---

[6] The Acting Commissioner relies upon Rudd v. Commissioner of Social Security for the proposition that requiring an ALJ to base an RFC finding on a physician's opinion "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." 531 F. App'x 719, 728 (6th Cir. 2013). Rudd is not the law of this circuit, and is unpersuasive to the extent that it is in conflict with the First Circuit rule that an ALJ is "not at liberty to . . . substitute his own views for [an] uncontroverted medical opinion." Nguyen, 172 F.3d at 35 (citing Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994); Nieves v. Sec'y of HHS, 775 F.2d 12, 14 (1st Cir. 1985); Suarez v. Sec'y of HHS, 740 F.2d 1 (1st Cir. 1984)).

authoriz[es] an adjudicator to reject a limitation contained in a medical opinion based exclusively on 'nonmedical evidence,' as opposed to a contrary medical opinion." Resp't's Mem. of Law (doc. no 11-1) 11 (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). The authority the Acting Commissioner cites provides, in pertinent part:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.

SSR 96-2p, 1996 WL 374188, at *4 (emphasis added). Thus, the Acting Commissioner is incorrect in her assertion Social Security guidance authorizes an ALJ to reject a treating source's opinion based solely upon nonmedical evidence. Moreover, there is a big difference between using nonmedical evidence to determine that a treating source's opinion is not entitled to controlling weight, which is what SSR 96-2p actually authorizes, and basing an RFC on nonmedical evidence, which is what the Acting Commissioner says the ALJ did in this case.

Finally, the court cannot agree with the Acting Commissioner that the ALJ's RFC is adequately supported because it was based upon Dubois's work history and activities of daily living. As a preliminary matter, the court appreciates the

16

Acting Commissioner's analogy concerning a hypothetical claimant's capacity for lifting, and agrees that where, for example, a claimant's daily exercise regime includes lifting 10-pound weights, an ALJ would not need to have a medical opinion saying that the claimant could lift 10 pounds before he or she could include that particular capacity in the claimant's RFC. Here, however, the record does not include any evidence that Dubois ever worked on a regular and continuing basis, i.e., eight hours a day, five days a week, during the relevant time period. In November of 2011, he reported that he was working 15 to 20 hours per week as a personal-care assistant, but also reported taking time off from that job because of his depression and/or anxiety. See Tr. 493. In December of 2011, he reported that he was working three to five days per week for a lumber company, depending upon how much work there was and how he was feeling. See Tr. 495. And, in March of 2012, he reported that he had been fired from his job as a massage therapist for missing work due to a depressive episode. See Tr. 455. Dubois's ability to work part time, when he was feeling up to it, is not evidence a reasonable mind could accept as sufficient to support a determination that he was capable of working eight hours a day, five days a week, without needing to take more than two days off per month because of his mental impairments. Thus,

the ALJ's RFC assessment is not supported by substantial evidence.

In sum, when he assessed Dubois's RFC, the ALJ committed one of two errors. Either he interpreted raw medical evidence or he based his assessment on nonmedical evidence that was not substantial. One way or the other, this case must be remanded for a proper assessment of Dubois's RFC.

## IV. Conclusion

For the reasons given, I recommend that the Acting Commissioner's motion for an order affirming her decision, document no. 11, should be denied, and that Dubois's motion to reverse that decision, document no. 9, should be granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

Any objection to this report and recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file an objection within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by

district court; issues not preserved by such objection are precluded on appeal).

_____
Andrea K. Johnstone
United States Magistrate Judge

October 28, 2015

cc: Laurie Alice Smith, Esq.
    D. Lance Tillinghast, Esq.
    Michael T. McCormack, Esq.